UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| PAUL HARD;<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT BENTLEY, in his official capacity as Governor of the State of Alabama; LUTHER JOHNSON STRANGE, III in his official capacity as Attorney General of the State of Alabama; CATHERINE M. DONALD in her official capacity as the State Registrar of Vital Statistics; STEVEN L. REED in his official capacity as Probate Judge for the County of Montgomery; RICHARD I. LOHR, II, Administrator of the ESTATE of DAVID FANCHER;<br><br>　　　　　Defendants. | Civil Action No. 2:13-CV-922-WKW-SRW<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>Claim of Unconstitutionality of Marriage Protection Act and Constitutional Amendment 774 (Sanctity of Marriage Amendment) |

## PRELIMINARY STATEMENT

1.　Plaintiff seeks a declaration that Alabama's refusal to recognize same-sex marriages entered out of state violates the United States Constitution. Plaintiff also seeks injunctive relief necessary to recognize him to be a rightful beneficiary, as surviving spouse, to proceeds anticipated from a wrongful death action now pending in this Court (*Lohr v. Zehner*, No. 2:12-cv-00533-MHT) that arises out of a 2011 car accident in which Plaintiff's husband was killed.

2.　Plaintiff Paul Hard ("Paul") lives in Montgomery, Alabama and is a widower.

3.　His husband, Charles David Fancher ("David"), was killed in a traffic accident on Interstate 65 during the night of August 1, 2011. David's car slammed into a UPS truck that had overturned and was blocking the North-bound lanes of the highway. David died with ten minutes of impact.

1

4.     Paul is the "surviving spouse" and therefore should receive proceeds from a wrongful death action that now is pending in this Court.

5.     Certain provisions of Alabama law and the Alabama Constitution prevent this result, however.

6.     Proceeds from a wrongful death action in Alabama must be distributed pursuant to the laws of intestate succession. Those laws require that the majority of the proceeds should go to the surviving spouse.

7.     But Ala. Code § 30-1-19 ("Marriage Protection Act") and Ala. Const. Amend. No. 774 ("Sanctity of Marriage Amendment") prevent that from happening in this case. Under the Marriage Protection Act and the Sanctity of Marriage Amendment (collectively referred to as the "Sanctity Laws"), Paul cannot be deemed a surviving "spouse," even though he and David were lawfully married at the time of David's death.

8.     The Sanctity Laws provide that "[t]he state of Alabama shall not recognize as valid any marriage of parties of the same sex that occurred or was alleged to have occurred as a result of the law of any jurisdiction."

9.     These restrictions have no legitimate basis. They create two, unequal, classes of married couples living in the State of Alabama: those married couples who enjoy *all* the protections afforded to people who are married, including the right of a surviving spouse to recover proceeds in a wrongful death action, and those married couples, like Paul and David, who do not. The obvious purpose of the Sanctity Laws is to punish and demean citizens who have entered one type of marriage, but not the other.

10.    The United States Supreme Court recently held that the U.S. Constitution does not permit laws that single out a particular class of marriages for disfavored treatment. But that is precisely

what the Sanctity Laws do: they single out same-sex marriages and deny to those marriages the same rights and dignity that Alabama affords other marriages.

11. In doing so, the Sanctity Laws violate the right to equal protection and due process, as protected by the Fourteenth Amendment to the U.S. Constitution.

12. Paul therefore seeks a judgment to that effect, as well as an order requiring the Registrar of Vital Statistics to correct David's death certificate to indicate that Paul is the surviving spouse, an order requiring the administrator of David's estate, who currently is prosecuting the wrongful death action, to distribute any proceeds that are owing to Paul as the "surviving spouse," and an order invalidating those provisions of the Sanctity Laws that prohibit recognition of lawful same-sex marriages and preventing their enforcement.

## JURISDICTION AND VENUE

13. This is an action under 28 U.S.C. § 2201-2202 challenging Alabama's Sanctity Laws as violations of the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. This Court therefore has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 1343.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more defendants resides in this District, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

15. Plaintiff *Paul Hard* is an individual who lives in Montgomery, Alabama.

16. Defendant *Robert Bentley* is the Governor of the State of Alabama. Under the state constitution, he holds the "supreme executive power" of the state and is charged to "take care that the laws be faithfully executed." *See* Ala. Const. §§ 113, 120. By virtue of his position,

Governor Bentley maintains, and has exercised, enforcement authority in connection with the Sanctity Laws. As an example, he announced in September 2013 that he would not permit the Alabama National Guard to provide benefits to same-sex spouses, despite a federal directive to do so. According to news reports, Governor Bentley stated: "When they're under my command we will obey Alabama state law." The Governor maintains an office and official residence in Montgomery. Governor Bentley is sued in his official capacity.

17. Defendant *Luther Johnson Strange, III* is the Attorney General of the State of Alabama. Attorney General Strange is the state officer who "shall appear in the courts of . . . the United States, in any case in which the state may be interested in the result." *See* Ala. Code § 36-15-1(2). He has a statutory duty to give his opinion on any question of law connected with the interests of the state or with the duties of any of the departments, and also his opinion on questions of law relating to the duties of certain county and city officers, including court clerks and probate judges. *See* Ala. Code § 36-15-1(1)(b). He therefore maintains enforcement authority with respect to the Sanctity Laws and their application to conduct of the State and its subdivisions and court system. Indeed, a former Attorney General has exercised this statutory authority in connection with the question whether Alabama must recognize out-of-state same-sex unions, issuing a formal opinion in 2000 directing that Alabama and its subdivisions should not recognize civil unions entered into in Vermont. *See* Ala. Op. Att'y Gen. 2000-129 (Ala. A.G. 2000). Defendant Strange maintains his office in Montgomery, Alabama. Attorney General Strange is sued in his official capacity.

18. *Catherine M. Donald* is the State Registrar of Vital Statistics ("Registrar"). Alabama law requires that the Registrar direct and supervise the system of vital statistics and the Office of Vital Statistics. That office, located in Montgomery, Alabama, maintains and registers

4

certificates of death, and retains the power to amend death certificates that contain errors. *See* Ala. Code §§ 22-9A-3; 22-9A-2; 22-9A-14(a); Alabama Admin. Code r. 420-7-1-17. Ms. Donald therefore has an enforcement connection to the Sanctity Laws because she has the power to correct David Fancher's death certificate, which incorrectly indicates that David was "Never Married" at the time of his death, and that he had no surviving spouse. Ms. Donald is sued in her official capacity.

19. *Steven L. Reed* is the probate judge for the County of Montgomery. In Case No. 12-00288, the Probate Court of Montgomery County admitted David's will into the County record and issued Certified Letters Testamentary to Richard Lohr, II appointing him the Personal Representative of David's estate. Judge Reed has jurisdiction over certain matters related to David Fancher's estate, including the power to determine whether Paul is a surviving spouse for purposes of applying the laws of intestate succession. *See, e.g., Melton v. Jenkins*, 92 So. 3d 105 (2012) (reviewing probate court determination, after trial, whether a purported husband was in fact a "surviving spouse"). Judge Reed therefore has an enforcement connection to the Sanctity Laws. Judge Reed is sued in his official capacity, for declaratory relief only.

20. Defendant *Richard I. Lohr, II* is an individual who lives in Pinson, Alabama. Lohr is the administrator of David's estate. Under Alabama law, he, and he alone, is authorized to bring an action for wrongful death against those persons who caused David's death. He currently is pursuing such an action, under color of state law. The action now is pending in this Court, and is designated Case 2:12-cv-00533-MHT-SRW (M.D. Ala.). Lohr is named in his official capacity.

## FACTUAL BACKGROUND

21. David and Paul met on July 4th, 2004 for a first date. They became a couple soon thereafter. Throughout their time together, David occasionally asked Paul to marry him. Paul demurred at first, but Paul eventually, and enthusiastically, agreed to marry David and the couple was lawfully married on a beach on Cape Cod, in Massachusetts, on May 20, 2011. A copy of the marriage certificate is attached as Exhibit A.

22. The wedding ceremony featured a loving cup ceremony, adopted from their shared Scottish heritage. The cup is engraved with quotation from the Song of Solomon: "I am by beloved's and my beloved is mine." The tradition is to drink from the cup on the wedding day and on every anniversary, each drinking three times, to the love that was, the love that is, and the love that will be.

23. Paul reports that hugging David was "like coming home." David and Paul were a support to each other, traversing illness and adding joy to each other's lives.

24. Both men had been raised as Southern Baptists; Paul was a minister in earlier years. Eventually, both became active with an Episcopal church, David serving as a greeter as well as in the pastoral ministry committee of the church and Paul in the choir.

25. The couple made their life together in Alabama. Their home was in Montgomery. David worked as a director of information technology for a company in Birmingham and Paul is an associate professor at a university in Montgomery.

26. David made Paul the sole beneficiary of his will.

27. Paul had said goodbye to David in the early, dark morning of August 1, 2011 as David left to Birmingham for work. Paul received a call later that morning from Prattville Baptist Hospital informing him that David had been in an accident.

28. The complaint in the wrongful death case pending in this Court states that defendants in that case, truck drivers and a shipping company, were

> traveling North on Interstate 65 . . . in rural Autauga County, Alabama. Defendants' vehicle negligently and wantonly collided with another vehicle . . . causing Defendants' vehicle to overturn in the highway, blocking both Northbound lanes of Interstate 65. . . . At said time and place . . . Charles David Fancher, was also operating a motor vehicle, traveling North on Interstate 65. . . . Due to the negligence and wanton operation of the Defendants' vehicle and the nighttime lighting conditions and lack of adequate emergency reflectors, tape, and emergency warning lights and devices in place by Defendants, Plaintiff's decedent, Charles David Fancher, was caused to collide with the 2009 Sterling TK UPS tractor trailer truck being driven by [the Defendants].

29. Paul rushed to the hospital carrying the marriage license and other papers such as a power of attorney. Paul asked to see his husband or learn of his condition, but a hospital employee initially refused, telling Paul, "I can't release that information to you; we don't recognize same-sex marriage." Paul pleaded for information, but no doctor or nurse from Prattville Baptist Hospital ever spoke to Paul, despite Paul's desperate attempt to learn the condition of his husband.

30. After about a half hour, Paul eventually was permitted beyond the nurse's station to go see David. Paul still had no idea of David's condition at this point.

31. An attendant arrived and walked Paul down the hall towards an examining room. Paul asked if David was badly hurt. The attendant turned to Paul, and said, "Well, he's dead."

32. Paul lost strength in his legs, falling to the ground. He reached to the attendant who stood to the side, offering no support as Paul collapsed.

33. Paul made arrangements and paid for David's burial services at Highland Memorial Gardens, in Bessemer, Alabama. By law, the funeral director must note certain biographical information about the deceased on the death certificate. The Highland Memorial funeral director indicated on the death certificate that David was "Never Married." He left blank the space for

the name of the "Surviving Spouse." When Paul saw the inaccurate information, he asked that it be changed, but the funeral director refused. A copy of the Death Certificate, signed by Defendant Catherine M. Donald and registered with the State of Alabama, is attached as Exhibit B.

### Alabama Wrongful Death Actions & Laws of Intestate Succession

34. An action for wrongful death in Alabama has several unusual features. First, the only person who may bring an action for wrongful death is the administrator of the decedent's estate. *See* Ala. Code § 6-5-410(a).

35. Second, the administrator must distribute any damages recovered pursuant to Alabama's laws of intestate succession, even if the decedent died with a will. *See* Ala. Code § 6-5-410(c); *see also Steele v. Steele*, 623 So. 2d 1140, 1141 (Ala. 1993) ("The damages from a wrongful death award pass as though the decedent died without a will").

36. As a result, Defendant Lohr – the administrator – must distribute any proceeds from the now-pending wrongful death action in accordance with the laws of intestate succession, even though David died with a will in which he named Paul his sole beneficiary.

37. The intestacy laws specify the portion of the estate, or in this case, of the damages award, to be distributed to various family members of the deceased.

38. Ala. Code § 43-8-41, for example, sets forth the "share of the spouse" under various circumstances.

39. Specifically, the provision provides that if there are no children but there is a surviving parent or parents, the "surviving spouse" is to receive "the first $100,000 in value plus one-half of the balance of the intestate estate."

40. Under Alabama law and the Alabama Constitution, however, Paul cannot be deemed a surviving "spouse."

41. The Sanctity Laws prohibit the State of Alabama from recognizing the validity of Paul and David's marriage, and therefore prohibit recognizing Paul as the surviving "spouse."

42. At least one court has concluded that these provisions require Alabama courts to read the word "spouse" when used in an Alabama statute to exclude a same-sex spouse. *See In re Adoption of K.R.S.*, 109 So. 3d 176, 178 (Ala. Civ. App. 2012) (Sanctity Laws require court to interpret the word "spouse" as used in adoption laws to exclude same-sex spouse).

43. Under the Sanctity Laws, Lohr is required to distribute the proceeds from the wrongful death action as if Paul is not the surviving spouse; and upon information and belief, he intends to do so absent court order.

### Alabama's Disapproval of Lawful Same-Sex Marriage

44. Marriage is a legal status. Two people become married when, after obtaining a license from the state, a person authorized by state law solemnizes their union. *See, e.g.*, Ala. Code § 30-1-7.

45. Being married confers numerous rights and protections, and imposes numerous obligations, recognized by the state.

46. Alabama, for example, provides that one spouse may not be compelled to testify against another in a criminal trial. *See* Ala. Code § 12-21-227.

47. One spouse generally may not sell real estate in Alabama without the assent of the other. *See* Ala. Code § 30-4-12.

48. Historically, husbands have been required to support their wives, and Alabama considers the failure to do so a crime. *See* Ala. Code § 30-4-50.

49. Married couples, but not unmarried couples, may petition jointly to adopt children in Alabama. *See* Ala. Code § 26-10A-5.

50. And, of special importance to this case, when one spouse dies without a will, the surviving spouse is entitled to a substantial share of the decedent's estate. *See* Ala. Code § 43-8-41(2).

51. In short, Alabama confers a host of benefits, and imposes numerous responsibilities, on people who are married. This collection of benefits and responsibilities provides official recognition of the dignity and legitimacy of the married couple's union, and the unique status of married persons under law.

52. Alabama, like all other states, generally recognizes people within its boundaries to be "married" even if they became married in another state. The Supreme Court of Alabama, for instance, has declared the general rule that "a marriage valid where celebrated is valid everywhere." *See Krug v. Krug*, 296 So. 2d 715, 717 (Ala. 1974).

53. Notwithstanding this general rule, however, Alabama has *twice* determined to deny recognition to same-sex couples who have married in another state.

54. In 1998, the Alabama Legislature enacted the Alabama Marriage Protection Act. *See* Ala. Code § 30-1-19. That law prohibits, among other things, the recognition of "any marriage of parties of the same sex that occurred or was alleged to have occurred as a result of the law of any jurisdiction."

55. Soon thereafter, the Office of the Attorney General issued an opinion concluding that the Marriage Protection Act would prevent the state or any of its subdivisions or businesses within the state from recognizing out-of-state marriages or unions between people of the same sex, and

that no provision of the U.S. Constitution would require a different result. *See* Ala. Op. Att'y Gen. 2000-129 (Ala. A.G. 2000).

56. Notwithstanding the Attorney General's opinion that the Marriage Protection Act adequately protected Alabama from out-of-state same-sex unions, the legislature took additional action just years later to further safeguard Alabama from the specter of same-sex unions.

57. In 2005, the Alabama Legislature proposed a constitutional amendment, entitled the Sanctity of Marriage Amendment. This amendment utilized language nearly identical to the language of the Marriage Protection Act seeking to ensure, as a matter of state constitutional law, that Alabama will not recognize out-of-state same-sex marriages.

58. The Legislature submitted the proposed amendment to voters on June 6, 2006. The voters approved it, and it was proclaimed ratified on June 28, 2006.

**Alabama's Refusal to Recognize Lawful Same-Sex Marriages Is Unconstitutional**

59. The effect of the Sanctity Laws is to deny to same-sex married couples the rights and obligations of marriage that are available to all other married couples within the State of Alabama.

60. Plaintiff contends that those provisions violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

61. Notwithstanding state power to regulate marriage, states lack authority to deny guarantees of liberty and equality protected by the Fourteenth Amendment.

62. The class of persons harmed by the Sanctity Laws – married same-sex couples – is substantial yet discrete. 2010 census data reveal that 1,704 of the 6,528 same-sex couples in Alabama identify as spouses, according to reporting by the Williams Institute. *See* http://williamsinstitute.law.ucla.edu/ uncategorized/alabama/. On information and belief, a

11

significant portion of these couples who identify as spouses have been legally married out of state.

63.     The U.S. Supreme Court recently addressed the constitutionality of a similar restriction, and found it to be unconstitutional. *United States v. Windsor*, 133 S. Ct. 2675 (2013), addressed Section 2 of the federal "Defense of Marriage Act" (DOMA). DOMA precluded the federal government from recognizing the validity of same-sex marriages validly entered in jurisdictions permitting them.

64.     The Supreme Court concluded that (1) "DOMA's principal effect is to identify a subset of state-sanctioned marriages and make them unequal"; (2) "DOMA divests married same-sex couples of the duties and responsibilities that are an essential part of married life"; and (3) "the principal purpose and the necessary effect of this law are to demean those persons who are in a lawful same-sex marriage." *Windsor*, 133 S. Ct. at 2694, 2695.

65.     For these reasons, the Supreme Court concluded that DOMA's prohibition of federal recognition of lawful same-sex marriages deprived people in those marriages of due process and equal protection.

66.     Alabama's prohibitions on the recognition of lawful same-sex marriages have precisely the same unconstitutional purpose and effect as did the DOMA provision found to be unconstitutional in *Windsor*. The Sanctity Laws (1) identify lawful same-sex marriages and make them unequal; (2) divest from Alabama same-sex married couples numerous rights and responsibilities (including the right to inherit from an intestate spouse); and (3) demean Alabamians who lawfully have entered into same-sex marriages.

### The Current Dispute Regarding the Constitutionality of the Sanctity Laws and Distribution of Wrongful Death Proceeds

67. There exists an actual controversy between Plaintiff Paul Hard, on one hand, and the Defendants on the other, regarding the constitutionality of those provisions of the Sanctity Laws that purport to prevent recognition of Paul as David's "surviving spouse" and to prevent distribution to Paul of proceeds from the wrongful death action that Lohr currently is prosecuting.

68. On information and belief, the Defendants apart from Lohr contend that these provisions are consistent with the U.S. Constitution.

69. On information and belief, Defendant Lohr takes no position on the constitutionality of the marriage restrictions, but understands that they preclude him from recognizing Paul as a "surviving spouse" or from distributing to Paul any proceeds from the wrongful death action Lohr now is prosecuting.

70. This dispute is concrete, live, and immediate.

71. This Court has set trial in the wrongful death action for the summer of 2014. On information and belief, the parties to that action have engaged in settlement discussions, and settlement may be imminent.

72. Absent the issuance of declaratory and injunctive relief including an order that Defendant Lohr should distribute any proceeds owing to Paul as the surviving spouse, Paul will suffer a particularized injury in that he will not receive any proceeds (by way of settlement or verdict) to which he would be entitled but for the unconstitutional Sanctity Laws.

73. Paul will suffer irreparable harm including loss of proceeds from the wrongful death suit and continuing harms related to Alabama's refusal to recognize his marriage unless injunctive relief is granted. Such harm to Plaintiff outweighs any purported harm to the Defendants

resulting from their treating out-of-state marriages of all Alabama citizens equally. Granting injunctive relief will not disserve the public interest.

## COUNT I

### (Declaratory and Injunctive Relief Pursuant to the Declaratory Judgment Act – Violation of Equal Protection – Fourteenth Amendment)

74. Plaintiff incorporates all prior paragraphs.

75. If Plaintiff were in a different-sex marriage, he would be treated as a spouse for all purposes under state law, including under the laws of intestate succession.

76. Solely because Plaintiff is gay and married a person of the same sex, the Sanctity Laws treat his marriage as a legal nullity, unconstitutionally creating a second-tier class of citizens and marriages.

77. Defendants' failure to recognize marriages of same-sex couples validly entered in other jurisdictions is unconstitutional under the Equal Protection Clause because it categorically denies the benefits of marriage to that class of citizens and marriages on the basis of sexual orientation.

78. The Sanctity Laws' prohibition is similarly unconstitutional because it denies Paul recognition as a surviving spouse with respect to the wrongful death action because he is gay and because he married a man rather than a woman, without any legitimate basis.

79. The purpose and effect of the marriage restrictions is to single out one class of marriages – same-sex marriages – and make them unequal. The marriage restrictions exclude the people in those marriages from the benefits and burdens available to all other married persons in the State of Alabama.

80. "The principal purpose [of the Sanctity Laws] is to impose inequality, not for other reasons like governmental efficiency." *See Windsor*, 133 S. Ct. at 2694.

81. The Sanctity Laws are invalid for lack of any legitimate purpose that could overcome the Sanctity Laws' purpose and effect to disparage and to injure those who are due equal personhood and dignity under law.

82. The Sanctity Laws similarly harm Plaintiff and other married, same-sex couples by telling them that their otherwise valid marriages are unworthy of state recognition.

83. "The Constitution's guarantee of equality 'must at the very least mean that a bare [governmental] desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *Windsor*, 133 S. Ct. at 2693 (quoting *Department of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973)).

84. Plaintiff has fulfilled his duties as a surviving spouse and state citizen, yet he is afforded none of the rights taken for granted by different-sex married couples, including the right to a death certificate of his husband that does not indicate "Never Married."

85. The Sanctity Laws target lesbian, gay, and bisexual people, by prohibiting recognition of their marriages, consistent with a long history of governmental disfavored treatment of that class.

86. The Sanctity Laws write "inequality into the entire [Alabama] Code." *See Windsor*, 133 S. Ct. at 2694.

87. Defendants' failure to recognize Plaintiff's marriage is under color of law.

## COUNT II

**(Declaratory and Injunctive Relief Pursuant to the Declaratory Judgment Act – Denial of Due Process – Deprivation of Liberty)**

88. Plaintiff incorporates all prior paragraphs.

89. The Sanctity Laws injure lesbian, gay, and bisexual citizens of Alabama who enter lawful marriages in other jurisdictions and by doing so violate basic due process principles applicable to Alabama and the Defendants under the Fourteenth Amendment.

90. Under the Sanctity Laws, "same-sex married couples have their lives burdened, by reason of government decree, in visible and public ways. By [their] great reach, [the Sanctity Laws] touch[] many aspects of married and family life, from the mundane to the profound." See *Windsor*, 133 S. Ct. at 2694.

91. The "principal purpose and the necessary effect" of the Sanctity Laws "are to demean those persons who are in a lawful same-sex marriage." *Id.* at 2695. Therefore, the Sanctity Laws are unconstitutional as a deprivation of the liberty of the person protected by the Due Process Clause under the Fourteenth Amendment.

92. "Private, consensual sexual intimacy between two adult persons of the same sex may not be punished by the State." *Id.* at 2692 (citing *Lawrence v. Texas*, 539 U.S. 558, 567, 123 S.Ct. 2472 (2003)). Yet the Sanctity Laws do precisely that.

93. The Sanctity Laws unconstitutionally demean same-sex couples, "whose moral and sexual choices the Constitution protects." *Id.*, 133 S. Ct. at 2694.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants, providing the following relief:

   (a) Issue a judgment pursuant to 28 U.S.C. § 2201 declaring that those provisions of the Marriage Protection Act and the Sanctity of Marriage Amendment that prevent Alabama from recognizing the validity of lawful same-sex marriages violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment;

   (b) Issue an injunction pursuant to 28 U.S.C. § 2202 requiring Alabama state officials to recognize marriages of same-sex couples entered in other jurisdictions on an equal basis as the marriages of different-sex couples;

   (c) Issue an injunction pursuant to 28 U.S.C. § 2202 that Defendant Lohr distribute to Plaintiff any proceeds from the wrongful death action that are owing to Plaintiff

as "surviving spouse," and without regard to the Marriage Protection Act or the Sanctity of Marriage Amendment;

(d) Issue an injunction pursuant to 28 U.S.C. § 2202 that Catherine M. Donald correct David Fancher's death certificate to indicate that David was married at the time of death and that Paul Hard is his surviving spouse;

(e) Award costs and fees as permitted by law; and

(f) Provide such further relief as the Court deems proper.

December 16, 2013

Respectfully submitted,

SOUTHERN POVERTY LAW CENTER

By: *Samuel Wolfe*

David C. Dinielli* (California Bar No. 177904)
Samuel E. Wolfe (ASB-2945-E63W)
400 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 956-8200
Facsimile: (334) 856-8481
david.dinielli@splcenter.org
sam.wolfe@splcenter.org
*Application for admission *pro hac vice* forthcoming

*(Attorneys for Plaintiff)*

17