**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| PAUL HARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-cv-922-WKW |
| | ) | |
| ROBERT BENTLEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## Defendants' Sur-Reply
## in Support of their Motion for Summary Judgment
## (Doc. 63-64), and in Opposition to the Plaintiff's
## Motion for Summary Judgment (Doc. 59)

LUTHER STRANGE
*Attorney General*

James W. Davis  (ASB-4063-I58J)
Laura E. Howell (ASB-0551-A41H)
*Assistant Attorneys General*

**OF COUNSEL:**

David B. Byrne, Jr. (ASB-0354-R69D)
*Chief Legal Advisor*
OFFICE OF THE GOVERNOR
Alabama State Capitol
600 Dexter Avenue, Ste. NB-05
Montgomery, Alabama 36130
(334) 242-7120
david.byrne@governor.alabama.gov

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
(334) 242-7300
(334) 353-8440 (fax)
jimdavis@ago.state.al.us
lhowell@ago.state.al.us

**Additional Counsel for
Governor Robert Bentley**

**Attorneys for Alabama Governor Robert
Bentley and Alabama Attorney General
Luther Strange**

October 29, 2014

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

1.  Plaintiff misses Defendants' primary point that Alabama's marriage laws do not distinguish between heterosexual and homosexual relationships, but instead distinguish between marital relationships and non-marital relationships ............................1

2.  The parties present opposing views of marriage, and Plaintiff's view has no discernible limits ...............................................................................................3

3.  Sherif Girgis is qualified to express the opinions cited by the Defendants...........................6

4.  *Baker v. Nelson* remains good law and requires a judgment in favor of the Defendants...............................................................................................7

5.  Due process: Plaintiff seeks a *new* right, not a fundamental right that is deeply rooted in history and tradition ...............................................................................9

6.  Plaintiff's responsive Equal Protection arguments incorrectly shift the burden of proof and incorrectly frame the issue as one of gender discrimination..............................11

7.  The fact that some same-sex couples raise children does not change the fact that Alabama's marriage laws are rationally related to legitimate government interests ..........14

8.  A ruling for the Defendants would permit the continuation of a healthy, ongoing debate about marriage and would leave a complex social issue in the hands of the people and their elected representatives ......................................................................15

Certificate of Service ...............................................................................................18

i

TABLE OF AUTHORITIES

## Cases

*Agostini v. Felton*,
   521 U.S. 203 (1997) ................................................................................................. 8

*Baker v. Nelson*,
   409 U.S. 810 (1972) ............................................................................................ 7, 9

*Baker v. Vermont*,
   744 A.2d 864 (Vt. 1999) ........................................................................................ 12

*Conde-Vidal v. Garcia-Padilla*,
   ___ F. Supp. 3d ___, 2014 WL 5361987 (D. P.R. Oct. 21, 2014) ............................. 5, 8, 9, 16

*Hernandez v Robles*,
   855 N.E.2d 1 (N.Y. 2006) .................................................................................. 10-11

*Hicks v. Miranda*,
   422 U.S. 332 (1975) ................................................................................................. 8

*Johnson v. Robison*,
   415 U.S. 361 (1974) ................................................................................................ 12

*Lackey v. Texas*,
   514 U.S. 1045 (1995) ............................................................................................. 16

*Lofton v. Secretary of the Dep't of Children and Family Serv.*,
   358 F.3d 804 (11th Cir. 2004) ......................................................................... 11, 12

*Loving v. Virginia*,
   388 U.S. 1 (1967) ......................................................................................... 3, 10, 11

*Maynard v. Hill*,
   125 U.S. 190 (1888) ................................................................................................. 3

*Nguyen v. I.N.S.*,
   533 U.S. 53 (2001) ................................................................................................. 13

*Robicheaux v. Caldwell*,
   2 F. Supp. 3d 910 (E.D. La. 2014) .................................................................... 13, 16

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
   490 U.S. 477 (1989) ................................................................................................. 8

*Scheiber v. Dolby Labs., Inc.*,
   293 F. 3d 1014 (7th Cir. 2002) ............................................................................... 8

*Schuette v. Coal. To Defend Affirmative Action,*
    134 S.Ct. 1623 (U.S. April 22, 2014) ............................................................................ 15, 16

*Sevcik v. Sandoval,*
    911 F.Supp.2d 996 (D. Nev. 2012) ...................................................................................... 3

*Sosna v. Iowa,*
    419 U.S. 393 (1975) ............................................................................................................. 9

*State Oil Co. v. Khahn,*
    522 U.S. 3 (1997) ................................................................................................................. 8

*Turner v. Safley,*
    482 U.S. 78 (1987) ............................................................................................................. 11

*United States v. Windsor,*
    133 S.Ct. 2675 (2013) ............................................................................................... 8, 9, 15

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ........................................................................................................... 10

*Zablocki v. Redhail,*
    434 U.S. 374 (1978) ........................................................................................................... 11


**Other Authorities**

Elizabeth Brake, *Minimal Marriage: What Political Liberalism Implies for Marriage*
    *Law,* 120 ETHICS 302, 303 (2010) .................................................................................... 5

Sherif Girgis, Robert P. George, and Ryan T. Anderson, *What Is Marriage? Man and*
    *Woman: A Defense,* Encounter Books (December 2012) ..................................................... 6

Sherif Girgis, Robert P. George, and Ryan T. Anderson, "What Is Marriage?", Harvard
    Journal of Law and Public Policy (December 2010) ............................................................ 6


**Rules**

F.R.E. 702(a) ............................................................................................................................. 6, 7


**Internet Authorities**

Sherif Girgis, "Putting to Rest a Bad Argument: Marriage Law and Sex
    Discrimination," Public Discourse (Oct. 21, 2014) (available at
    http://www.thepublicdiscourse.com/2014/10/13963/, last visited Oct. 24, 2014) ................... 13

### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| PAUL HARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-cv-922-WKW |
| | ) | |
| ROBERT BENTLEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' SUR-REPLY
#### IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (DOC. 63, 64)
#### AND IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 59)

Alabama Governor Robert Bentley and Alabama Attorney General Luther Strange respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment (docs. 63-64) and in opposition to the Plaintiff's Motion for Summary Judgment (doc. 59). For the reasons stated below, there is no genuine dispute of material fact and Defendants are entitled to a judgment as a matter of law. Plaintiff's motion is therefore due to be denied and Defendants' motion is due to be granted.

1. **Plaintiff misses Defendants' primary point that Alabama's marriage laws do not distinguish between heterosexual and homosexual relationships, but instead distinguish between marital relationships and non-marital relationships.**

There is a disconnect, a ships-passing-in-the-night quality to the summary judgment briefing thus far. Plaintiff insists (as he must) upon treating this case as if it presented a clean division of same-sex couples and opposite-sex couples, of heterosexuals and homosexuals. But Alabama law does not distinguish on the basis of sexual orientation. It does not distinguish between gays and lesbians on one side and heterosexuals on the other, but between marriage and non-marriage.

1

As discussed below and in Defendants' principal brief, the parties disagree on the very definition of marriage. The definition adopted by Alabama from its inception as a state, derived from ancient law and custom, does not include same-sex relationships or many other non-marital relationships. This is not to say that same-sex couples or other non-marital ensembles do not share love or commitment, that their relationships lack dignity, or that prejudice should be tolerated. But while the law must and should recognize the value and freedom and dignity of all Alabama citizens, a same-sex intimate relationship, like so many other human relationships, is not a "marriage" as that term is recognized in Alabama law.

That is the distinction Alabama law makes: marriage and non-marriage. And it makes this distinction for the reasons identified in the State's earlier brief. Rather than responding to, or even accurately characterizing, the State's argument, the Plaintiff's reply brief simply sets up and knocks down a lot of straw men. The Defendants agree that some of the arguments discussed by the Plaintiff are convoluted, but those are not the State's arguments.[1]

The State's argument is really quite simple: It is rational to distinguish in law between marriage and non-marriage. For the State to privilege biological and kinship relations that the State did not create, and which history, science, and common sense show are beneficial to children, is not to discriminate against any Alabamians on the basis of their sexual identity. It is to distinguish marital and kinship relations from non-marital and non-kinship relations.

---

[1] For example, Plaintiff implies that the State must prove that it served some benefit for Plaintiff's suffering to have been multiplied at the time of his partner's death by denying him information about David Fancher's health. That argument not only reverses the burden of proof and turns the rational basis test on its head, but it is a response to an argument that was never made.

**2. The parties present opposing views of marriage, and Plaintiff's view has no discernible limits.**

Plaintiff's brief is premised on the notion that there is one single concept of marriage (and that it is therefore unlawful to exclude any eligible relationships that fit within that concept), but there is not a single definition of marriage. At least two competing concepts are presented in this case. One – the conjugal view – is the view held by Alabama law. Proponents of this view see marriage as inherently an opposite-sex coupling – male-female by definition – that has among its purposes linking children to an intact family formed by their biological parents. It developed "to solidify, standardize, and legalize the relationship between a man, a woman, and their offspring." *Sevcik v. Sandoval*, 911 F.Supp.2d 996, 1015 (D. Nev. 2012) (citing *Maynard v. Hill*, 125 U.S. 190, 211 (1888)). It is "fundamental to our very existence and survival." *Loving v. Virginia*, 388 U.S. 1, 12 (1967). Under the conjugal view, no other human relationship can be a "marriage" regardless of the depth of shared commitment.

Another view of marriage, held by the Plaintiff and other proponents of "same-sex marriage," is rather new, and that form of marriage exists "to solemnize and memorialize love, companionship, and a commitment of mutual support." (Doc. 67 at 9). It is about the affection shared by adults. Sexual complementarity is not a requirement of this view of marriage. People who hold this "revisionist" view may raise children whom they deeply love, but connecting children to their parents and imposing duties on parents are not definitional features of revisionist marriage.

Without critically examining his own revisionist view, the Plaintiff asserts, but does not demonstrate, that the State has excluded from marriage some relationships that are marital in fact. But this of course begs the question of *what marriage is*. The revisionist view enables Plaintiff to characterize the right to marry as an individual "freedom of choice of whom to

marry," (doc. 67 at 18), unconstrained by considerations of sexual complementarity, the potential for and rights of children, and biological kinship.

In other words, as the State anticipated in its earlier brief, Plaintiff views marriage as the Massachusetts Supreme Judicial Court views marriage, as an institution that is concerned exclusively with the affection of adults. But Plaintiff does not explain why, within his conception of marriage, marriage must involve sexual intimacy, why it must be limited to two loving, committed people, or why indeed they must be committed. If marriage is all about love and companionship, as the Plaintiff asserts, then marriage must as a matter of law and on the Plaintiff's own logic be opened to all committed groups of people. To limit it to conjugal couples and same-sex couples only would arguably discriminate against other loving groups.

The Constitution may permit States to adopt the revisionist view, as states like New York have done through the accommodations and compromises of the democratic process. That said, as Defendants explained in their initial brief, the consequences and the messages inherent in the law are different when *courts* impose one view of marriage as a matter of social policy. Plaintiff has not demonstrated any limits to his view of marriage that would allow a court to determine what those consequences may be. Why must revisionist marriage be limited to couples? Must the affection involve romantic love, or are other forms of affection eligible for marital recognition? On what possible basis could adult siblings be excluded from marriage, particularly if they are celibate, or infertile, or same-sex? Plaintiff urges that the Court should not be concerned with what he disparagingly calls "slippery slope" arguments, but these are not slippery slopes; they are logical entailments of the revisionist conception of marriage which lacks any limiting principles. A court, which must be concerned with where its logic leads, cannot ignore them.

Last week, a federal judge in Puerto Rico, holding that the Constitution does not require the Commonwealth to redefine marriage, addressed these concerns:

> A clear majority of courts have struck down statutes that affirm opposite-gender marriage only. In their ingenuity and imagination they have constructed a seemingly comprehensive legal structure for this new form of marriage. And yet what is lacking and unaccounted for remains: are laws barring polygamy, or, say the marriage of fathers and daughters, now of doubtful validity? Is "minimal marriage", where "individuals can have legal marital relationships with more than one person, reciprocally or asymmetrically, themselves determining the sex and number of parties" the blueprint for their design? *See* Elizabeth Brake, *Minimal Marriage: What Political Liberalism Implies for Marriage Law*, 120 ETHICS 302, 303 (2010). It would seem so, if we follow the plaintiffs' logic, that the fundamental right to marriage is based on "the constitutional liberty to select the partner of one's choice."
>
> Of course, it is all too easy to dismiss such concerns as absurd or of a kind with the cruel discrimination and ridicule that has been shown toward people attracted to members of their own sex. But the truth concealed in these concerns goes to the heart of our system of limited, consent-based government: those seeking sweeping change must render reasons justifying the change and articulate the principles that they claim will limit this newly fashioned right.

*Conde-Vidal v. Garcia-Padilla*, ___ F. Supp. 3d ___, ____, 2014 WL 5361987 at *10 (D. P.R. Oct. 21, 2014).

Plaintiff has not explained what limits, if any, exist to his conceptualization of marriage, and has largely ignored the risks of unintended consequences. Courts lack that luxury.

In the end, this Court need not – and should not – decide whether one view of marriage is correct and one is wrong. It need not make a finding that one is better than the other. But there can be no doubt that these views are *different*, that neither is addressed in the Constitution, that there are social goods to the conjugal view, and that imposing one view in favor of another would involve a new definition of marriage in this State. The people of Alabama should be allowed to decide whether they wish to change a definition of marriage that has benefited society for millennia.

5

### 3.   Sherif Girgis is qualified to express the opinions cited by the Defendants.

Plaintiff challenges Sherif Girgis' qualifications as an expert witness. As a preliminary matter, the time for *Daubert* motions has come and gone. (*See* Uniform Scheduling Order, doc. 44 at 2). Even so, Plaintiff's arguments fail because he understates Girgis' qualifications, which more than satisfy the requirements of F.R.E. 702.

Plaintiff disparagingly refers to Girgis as a "graduate student," as if that was his only qualification to discuss marriage. It is true that Girgis is a law student and a Ph.D. candidate, but to refer to him as a "mere" graduate student ignores the fact that Girgis has already completed an A.B. in philosophy from Princeton University (where he won an academic prize for the best thesis on ethics and best in philosophy) and a second (B.Phil.) degree in moral, political, and legal philosophy and the philosophy of Aristotle from the University of Oxford as a Rhodes Scholar. Such accomplishments are not negated simply because a person seeks *more* education. No rule of evidence or case decision requires a court to ignore what a proposed expert has achieved and look only at what he is presently achieving.

In addition, Girgis was lead author of "What Is Marriage?", which appeared in December 2010 in the Harvard Journal of Law and Public Policy. He and his co-authors (Robert P. George, McCormick Professor of Jurisprudence, Princeton Univ., and Ryan T. Anderson, William E. Simon Fellow in Religion and a Free Society at the Heritage Foundation) further developed their argument for the book *What Is Marriage? Man and Woman: A Defense*, released by Encounter Books in December 2012 and cited twice by the U.S. Supreme Court. Both works make a philosophical case for the view that marriage is inherently a male-female union, and a policy-based case for enshrining or preserving that view in law.

Girgis has participated in more than 70 lectures, debates, conferences, or panel discussions on the nature of marriage, and has written pieces on the topic (including replies to

critics) for legal-academic journals, an invitation-only philosophy textbook (in which most or all other contributors are full professors), national newspapers and other popular outlets; filed amicus briefs in federal- and state-court cases; and briefed government officials on marriage policy. He thus drawn on his graduate level training, engaged with the best contemporary scholarship on the same subject, published his findings in top-of-the-field publications, tested and refined those findings by engaging with top scholars' written critiques of those publications, and further refined them in academic conferences, panels and seminars.

Girgis' opinions relate to at least two of the points that Defendants have argued on summary judgment: (1) that to rule for the Plaintiff, this Court would necessarily have to decide *what marriage is* (that is, the Court would have to accept the Plaintiff's revisionist view as the "correct" view in order to impose it upon the State); and (2) that the history of the conjugal view of marriage is such that the Court may conclude it did not originate in animus. Girgis is therefore qualified by "experience, training, or education" – not just what he is pursuing, but what he *has achieved* – that "will help the trier of fact to understand the evidence or to determine a fact in issue." F.R.E. 702(a). His trained thinking on these issues, and his knowledge of what thinkers before him have said and written on the subject, can enlighten the Court on the philosophical nature of the issue, on the *very existence* of competing views of marriage, and how those views arose. Plaintiff has offered no expert opinions to the contrary.

When it comes to the question of *what is marriage*, Sherif Girgis quite literally wrote the book. The Court will be helped if it considers his opinions.

### 4. *Baker v. Nelson* remains good law and requires a judgment in favor of the Defendants.

Plaintiff again argues in his reply that this Court should ignore the Supreme Court's dismissal for want of a substantial federal question in *Baker v. Nelson*, 409 U.S. 810 (1972),

because of alleged "doctrinal developments." Plaintiff assumes that lower courts are free to decide for themselves, in the absence of a Supreme Court directive, that the Supreme Court might address the question differently today. They are not. As Judge Pérez-Giménez ruled,

> This Court is bound by decisions of the Supreme Court that are directly on point; only the Supreme Court may exercise "the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). This is true even where other cases would seem to undermine the Supreme Court's prior holdings. *Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent..."). After all, the Supreme Court is perfectly capable of stating its intention to overrule a prior case. But absent an express statement saying as much, lower courts must do as precedent requires. *State Oil Co. v. Kahn*, 522 U.S. 3, 20 (1997) (noting that the "Court of Appeals was correct in applying" a decision even though later decisions had undermined it). ... The Supreme Court, of course, is free to overrule itself as it wishes. But unless and until it does, lower courts are bound by the Supreme Court's summary decisions "'until such time as the Court informs [them] that [they] are not.'" *Hicks v. Miranda*, 422 U.S. 332, 344 (1975) (citation omitted).

*Conde-Vidal*, 2014 WL 5361987 at *5. He concluded,

> *Baker*, which necessarily decided that a state law defining marriage as a union between a man and woman does not violate the Fourteenth Amendment, remains good law.

*Id.* at *10. *See also*, *Scheiber v. Dolby Labs., Inc.*, 293 F. 3d 1014, 1018 (7th Cir. 2002) ("[W]e have no authority to overrule a Supreme Court decision no matter how dubious its reasoning strikes us, or even how out of touch with the Supreme Court's current thinking the decision seems.") (Op. of Posner, J.).

Judge Pérez-Giménez's opinion is also helpful on why, *even if* lower courts were free to ignore *Baker* based upon their own view of "doctrinal developments," decisions like *United States v. Windsor*, 133 S.Ct. 2675 (2013), where New York state law conferred legal status on the claimant's relationship, do not undermine *Baker* at all:

*Windsor* does not – cannot – change things. *Windsor* struck down Section 3 of DOMA which imposed a federal definition of marriage, as an impermissible federal intrusion on state power. 133 S. Ct. at 2692. The Supreme Court's understanding of the marital relation as "a virtually exclusive province of the States," *Id*. at 2680 (quoting *Sosna v. Iowa*, 419 U.S. 393, 404 (1975)), led the Supreme Court to conclude that Congress exceeded its power when it refused to recognize state-sanctioned marriages.

The *Windsor* opinion did not create a fundamental right to same-gender marriage nor did it establish that state opposite-gender marriage regulations are amenable to federal constitutional challenges. If anything, *Windsor* stands for the opposite proposition: it reaffirms the States' authority over marriage, buttressing *Baker's* conclusion that marriage is simply not a federal question. *Windsor*, 133 S. Ct. at 2691-93 ("[t]he definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations with respect to the '[p]rotection of offspring, property interests, and the enforcement of marital responsibilities'") … Contrary to the plaintiffs' contention, *Windsor* does not overturn *Baker*; rather, *Windsor* and *Baker* work in tandem to emphasize the States' "historic and essential authority to define the marital relation" free from "federal intrusion." *Windsor*, 133 S.Ct. at 2692. It takes inexplicable contortions of the mind or perhaps even willful ignorance – this Court does not venture an answer here – to interpret *Windsor's* endorsement of the state control of marriage as eliminating the state control of marriage.

*Conde-Vidal*, 2014 WL 5361987 at *8.

  *Baker v. Nelson* is the simplest and most straight-forward way of deciding this case, and simply following binding Supreme Court precedent requires a ruling for the Defendants.

**5. Due process: Plaintiff seeks a *new* right, not a fundamental right that is deeply rooted in history and tradition.**

  Plaintiff insists that he seeks the same "right to marriage" that heterosexual couples seek, but that argument ignores that fact that, as discussed above in Section 2, the parties define marriage very differently. What Plaintiff really seeks is to have this Court decide that Alabama must change its definition of marriage from one thing to an entirely different thing. What Plaintiff really seeks is a new right which requires redefining marriage not for the Plaintiff alone, but for everyone.

Once the right is carefully described, it becomes clear that Plaintiff seeks not the straight-forward right to marry, but *the right to marry someone of the same gender. See Washington v. Glucksberg*, 521 U.S. 702, 722 (1997) (rejecting "right to die" as insufficiently "precise," and instead defining the right as the "right to commit suicide which itself includes assistance in doing so.") If adult, non-intimate siblings banded together to raise the child of one of the siblings, and if they sought to have their care-giving relationship recognized as a "marriage" so that they could enjoy the benefits and status of a state-sanctioned relationship, we would not say they are seeking the "right to marriage". We would say they are seeking the right to marry a sibling, or the right to have all care-giving relationships receive the same status as conjugal marriages. The right would not be carefully described if the description omits the essential feature of the relationship and of the change in the existing definition of marriage. Likewise here, what Plaintiff seeks is something new. It therefore is not a "fundamental right" and need only pass the rational basis test.

*Loving v. Virginia*, 388 U.S. 1 (1967), is not to the contrary. As a New York court recognized, when upholding New York's previous man-woman definition of marriage:

> [T]he historical background of *Loving* is different from the history underlying this case. Racism has been recognized for centuries – at first by a few people, and later by many more – as a revolting moral evil. This country fought a civil war to eliminate racism's worst manifestation, slavery, and passed three constitutional amdnements to eliminate that curse and its vestiges. *Loving* was part of the civil rights revolution of the 1950's and 1960's, the triumph of a cause for which many heroes and many ordinary people had struggled since our nation began. …
>
> [T]he traditional definition of marriage is not merely a by-product of historical injustice. Its history is of a different kind. The idea that same-sex marriage is even possible is a relatively new one. Until a few decades ago, it was an accepted truth for almost everyone who ever lived, in any society in which marriage existed, that there could be marriages only between participants of different sex. A court should not lightly conclude that everyone who held this belief was irrational, ignorant or bigoted. We do not so conclude.

*Hernandez v Robles*, 855 N.E.2d 1, 8 (N.Y. 2006).[2]

Not that further evidence is necessary that *Loving v. Virginia* does not deal with "same-sex marriage," but it must be noted that five years after *Loving*, the Supreme Court never paused when holding in *Baker v. Nelson* that the Constitution does not require states to recognize "same-sex marriage."[3]

### 6. Plaintiff's responsive Equal Protection arguments incorrectly shift the burden of proof and incorrectly frame the issue as one of gender discrimination.

Plaintiff complains that Defendants have not provided evidence that its conjugal marriage definition in fact links children to their biological parents, or that recognizing "same-sex marriage" will in fact sever that link. But the burden is not on Defendants to present that evidence. "[A] state has no obligation to produce evidence to sustain the rationality of a statutory classification. Rather, the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Lofton v. Secretary of the Dep't of Children and Family Serv.*, 358 F.3d 804, 818 (11th Cir. 2004).

What Plaintiff calls "speculation" is no more than the assertion of a conceivable basis, which is all that is required under the rational basis test:

> The question is simply whether the challenged legislation is rationally related to a legitimate state interest. Under this deferential standard, a legislative classification is accorded a strong presumption of validity, and must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. This holds true even if the law

---

[2] *Turner v. Safley*, 482 U.S. 78 (1987), and *Zablocki v. Redhail*, 434 U.S. 374 (1978), are likewise consistent with the traditional view of marriage. In neither case did the Supreme Court reject the conjugal view of marriage, universally understood at the time, but merely examined whether a state has curbed some people's access to marriage *so understood*.

[3] Plaintiff contends that Defendants did not respond to their argument that Plaintiff also has a right to "remain married." Defendants have waived nothing. Arguing for a right to "remain married" is no different whatsoever from the argument that Alabama is required to recognize Plaintiff's out-of-state marriage. Defendants responded to Plaintiff's due process arguments at length, and Plaintiff's arguments fail.

seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.

*Lofton*, 358 F.3d at 818 (citations and quotation marks omitted). Alabama asserts, correctly, that it is reasonable for Alabama law to assume that a child will benefit from having a mother and a father, and that encouraging parents to marry will increase the likelihood that children will grow up with a mother and father. These are "conceivable facts that could provide a basis for the classification" of marriage and non-marriage, and Alabama's laws therefore pass the rational basis test.

Alabama need not prove that *denying* the benefits of marriage to relationships that are not marriages (such as same-sex couplings) will promote the State's interests. The question is whether providing those benefits to conjugal marriages will do so.  *See Johnson v. Robison*, 415 U.S. 361, 383 (1974) ("When, as in this case, the inclusion of one group promotes a legitimate governmental purpose, and the addition of other groups would not, we cannot say that the statute's classification of beneficiaries and non-beneficiaries is invidiously discriminatory.") Plaintiff attempts to distinguish *Johnson* by arguing that *Johnson* involved a provided benefit, whereas this case involves a *denial* of benefits, but Alabama marriage laws (like the law in *Johnson*) provides benefits to those relationships that are marriages. There is no difference.

The rational basis test is a very low hurdle. Plaintiff tries to raise that hurdle by arguing that the classification at issue is really one of *gender* discrimination. That cannot be so when the marriage laws apply equally to both genders. "[M]arriage laws are facially neutral; they do not single out men or women as a class for disparate treatment, but rather prohibit men and women equally from marrying a person of the same sex." *Baker v. Vermont*, 744 A.2d 864, 880 n.13 (Vt. 1999).

Moreover, in typical cases of gender discrimination (a male who wishes to attend an all-female school, for instance), eligibility for the benefit depends directly on the gender of the claimant. Here, however, the question of whether Plaintiff's relationship is a marriage does not depend on *his* gender, at least not directly. It depends upon the make-up of the *couple*. And Alabama law treats a male-male couple no differently than a female-female couple, or a male-male-female triad, or an all-female quartet, or any other combination that is non-marital.

In addition, unlike race, gender is relevant to conjugal marriage. The social benefits of child-bearing and child-rearing, and their link to the male-female pairing, are not mere social constructs, and the public interest in such pairings is self-evident. *See* Sherif Girgis, "Putting to Rest a Bad Argument: Marriage Law and Sex Discrimination," Public Discourse (Oct. 21, 2014) (available at http://www.thepublicdiscourse.com/2014/10/13963/, last visited Oct. 24, 2014). Even if the marriage laws made distinctions on the direct basis of gender, which they do not, the marriage laws would survive scrutiny. "To fail to acknowledge even our most basic biological differences … risks making the guarantee of equal protection superficial, and so deserving it." *Nguyen v. I.N.S.*, 533 U.S. 53, 73 (2001); *see also*, *Robicheaux v. Caldwell*, 2 F. Supp. 3d 910, 920 (E.D. La. 2014) ("Louisiana's laws and Constitution are directly related of achieving marriage's historically preeminent purpose of linking children to their biological parents.").

Alabama's laws, which make distinctions between marital relationships and non-marital relationships, are subject to the rational basis test. Defendants have no obligation to present evidence supporting its asserted interests, but have nonetheless shown that Alabama's marriage laws are rationally related to legitimate government interests.

**7. The fact that some same-sex couples raise children does not change the fact that Alabama's marriage laws are rationally related to legitimate government interests.**

Plaintiff asserts that the circumstances of children being raised by same-sex couples would improve if the State recognized the same-sex couples' relationships as "civil marriages." This speculative assertion cannot be considered by focusing only on children raised by same-sex couples; the Court must also consider present and future children who are, or have the potential to be, raised by their biological parents.

First of all, the issue raised by the plaintiff again demonstrates that his theory is without limits. If it is true that children raised by same-sex couples (by definition in the absence of one or more biological parent) could benefit if the couples' relationship was deemed a "marriage," then could the same not be said of a child being raised by the child's grandmother and aunt? Must the State call the grandmother-aunt relationship a "marriage" to avoid any stigma to the child they are raising? Or must the State do away with marriage altogether so as not to stigmatize children being raised by single parents?

Second, the redefinition of marriage that Plaintiff seeks would apply not only to him. It would apply to all Alabama residents. It would therefore reshape the legal and, likely, the social meaning of marriage across the State. The law must consider the effect that a redefinition of civil marriage may have on relationships that do or could one day provide children with both their biological parents. Redefining marriage to eliminate sexual complementarity – one man and one woman – from the law, as Plaintiff requests, entails eliminating the categories of mother and father. In order for Alabama to call a same-sex relationship a "marriage," it must make men and women fungible for each position in the marriage in all the civil indicia of marital and parental status, beginning with marriage, birth, and death certificates and (if the law is retain its logical rationality) moving on to the presumption of paternity, presumption of biological parental

14

custody, and all of the other legal incidents that support conjugal marriage and biological kinship, which the State identified in its principal brief.

This Court, to find for Plaintiffs, must rule not only that the absence of a biological father or mother in certain households is irrelevant, but that all fathers and mothers are fungible for a second adult of any sex in the eyes of the State. In other words, a redefinition imposed by a Court would rest on and enshrine into law the premise that biological parents are optional, and that no sensible, unbigoted person could think otherwise. Future parents may just take that message to heart, and believing the law's message that their children have no need of them, fail to marry or value permanency in marriage. It is reasonable for the State to consider what a redefinition of marriage would mean for children growing up in all varieties of circumstances, and to decline to redefine marriage to give more children the opportunity to be raised by their biological parents.

### 8.  A ruling for the Defendants would permit the continuation of a healthy, ongoing debate about marriage and would leave a complex social issue in the hands of the people and their elected representatives.

In *Schuette v. Coal. To Defend Affirmative Action*, a case Plaintiff does not cite, Justice Kennedy wrote that even an issue as constitutionally charged as affirmative action, with all its connections to race, was not so sensitive or complex that it should be taken out of the hands of the people. 134 S.Ct. 1623 (U.S. April 22, 2014). Likewise in *Windsor*, the Supreme Court explained that, with respect to a serious matter like altering the marriage definition to include same-sex couples, "[t]he dynamics of state government in the federal system are to allow the formation of consensus." 133 S.Ct. at 2692. *Windsor* noted that the people of New York chose to recognize "same-sex marriage" only "[a]fter a statewide deliberative process that enabled its citizens to discuss and weigh arguments for and against same-sex marriage." *Id.* at 2689.

Like New York, Puerto Rico, Louisiana, and other states, Alabama should be able to debate the issue of marriage.[4] Proponents of "same-sex marriage" may attempt to persuade Alabamians to adopt their point of view, and both sides can watch what happens in states that have democratically adopted a new definition of marriage. Federalism can work, if this Court follows *Baker v. Nelson*. A ruling for Defendants does not mean that Alabama will never redefine marriage. It would simply leave that decision where *Schuette* says it should lie: with the people. To do otherwise, a court must "assume[] the mantle of a legislative body," *Robicheaux*, 2 F. Supp. 3d at 925, and determine which social policy is best in its eyes.

As Judge Pérez-Giménez wrote last week, in a statement that is as true for Alabama as it is for Puerto Rico,

> Because no right to same-gender marriage emanates from the Constitution, the Commonwealth of Puerto Rico should not be compelled to recognize such unions. Instead, Puerto Rico, acting through its legislature, remains free to shape its own marriage policy. In a system of limited constitutional self-government such as ours, this is the prudent outcome. The people and their elected representatives should debate the wisdom of redefining marriage. Judges should not.

*Conde-Vidal*, 2014 WL 5361987 at *10.

For these reasons, the Plaintiff's motion for summary judgment should be denied, and the Defendants' motion for summary judgment should be granted.

---

[4] Recently the Supreme Court denied *certiorari* in several same-sex marriage cases, declining, for now at least, to close the door on the nation's debate. Perhaps the Court will one day revisit the issue, but for now, *Baker v. Nelson* remains the law and the Court is content to allow lower courts to express their varied judgments. The issue may continue to be debated and further developed. "[A] denial of *certiorari* on a novel issue will permit the state and federal courts to 'serve as laboratories in which the issue receives further study before it is addressed by [the Supreme] Court." *Lackey v. Texas*, 514 U.S. 1045 (1995) (Stevens, J. respecting denial of *certiorari*) (citation omitted).

Respectfully submitted,

LUTHER STRANGE
   *Attorney General*

<u>s/ James W. Davis</u>
James W. Davis  (ASB-4063-I58J)
Laura E. Howell (ASB-0551-A41H)
   *Assistant Attorneys General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
(334) 242-7300
(334) 353-8440 (fax)
jimdavis@ago.state.al.us
lhowell@ago.state.al.us

**Attorneys for Alabama Governor Robert
Bentley and Alabama Attorney General
Luther Strange**


**OF COUNSEL:**

David B. Byrne, Jr. (ASB-0354-R69D)
*Chief Legal Advisor*
OFFICE OF THE GOVERNOR
Alabama State Capitol
600 Dexter Avenue, Ste. NB-05
Montgomery, Alabama 36130
(334) 242-7120
david.byrne@governor.alabama.gov

**Additional Counsel for
Governor Robert Bentley**

17

**CERTIFICATE OF SERVICE**

  I certify that on October 29, 2014, I electronically filed the foregoing document using the Court's CM/ECF system which will send notification of such filing to the following persons:

Gabriel J. Smith        David C. Dinielli
FOUNDATION FOR MORAL LAW    Samuel E. Wolfe
1 Dexter Avenue        SOUTHERN POVERTY LAW CENTER
P.O. Box 4086         400 Washington Avenue
Montgomery, AL 36103      Montgomery, AL 36104
Telephone: 334.262.1245      Telephone: 334.956.8277
gabriel.joseph.smith@gmail.com    david.dinielli@splcenter.org
             sam.wolfe@splcenter.org




         s/James W. Davis
         Counsel for the Defendants

18