IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PAUL HARD,                          )
                                    )
            Plaintiff,              )
                                    )
      v.                            )    CASE NO. 2:13-CV-922-WKW
                                    )             [WO]
ROBERT BENTLEY, *et al.*,           )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Governor Robert Bentley's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), to which Plaintiff has responded.  (Docs. # 48, 53.)[1]  Upon consideration of the parties' arguments, the Complaint, and relevant law, the court finds that the motion to dismiss is due to be granted.

## I.  JURISDICTION AND VENUE

The court exercises subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.  Personal jurisdiction and venue are uncontested.

---

[1] Rule 12(b) motions "must be made before pleading if a responsive pleading is allowed. Fed. R. Civ. P. 12(b).  However, subject-matter jurisdiction is not a waivable 12(b) defense, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Hence, Governor Bentley's motion must be considered.

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) may assert either a factual attack or a facial attack to jurisdiction.  *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  In a facial attack, the court examines whether the complaint "sufficiently allege[s] a basis of subject matter jurisdiction." *Id.*  As when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, on a Rule 12(b)(1) facial attack the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded facts in the complaint as true.  *Id.*

## III.  BACKGROUND

This suit challenges the constitutionality of two provisions of Alabama law – the "Marriage Protection Act," Ala. Code § 30-1-19, and the "Sanctity of Marriage Amendment," Ala. Const. Amend. No. 774 (collectively the "Marriage Sanctity Laws").  (Compl. at 7.)  Plaintiff Paul Hard alleges he married David Fancher under the laws of Massachusetts, and the two made a life together in Alabama. When David passed away in a tragic accident in 2011, his Estate became entitled to the proceeds of a wrongful death suit.  Under Alabama law, the proceeds of wrongful death actions are distributed without respect to the decedent's will and according to the laws of intestate succession.  Plaintiff is not a surviving spouse under Alabama law.  Plaintiff therefore seeks, among other relief, a declaratory

judgment that the provisions of the Marriage Sanctity Laws violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the extent that they prevent Alabama from recognizing same-sex marriages entered in other states, and an injunction requiring "Alabama state officials" to recognize as marriages the unions of same-sex couples married under the laws of other states. (Compl. at 16–17.)[2]

Governor Bentley is named as a defendant in his official capacity only. The Alabama Attorney General, Luther Strange, is also a defendant in his official capacity, but he has not raised sovereign immunity as a defense, and he has chosen to defend the State of Alabama's interests in defining marriage as between one man and one woman. Governor Bentley is alleged to have the supreme executive power in state government and to maintain and exercise "enforcement authority in connection with the [Marriage] Sanctity Laws" of Alabama. (Compl. at ¶ 16.) The Complaint particularly identifies Governor Bentley's announcement in September 2013 that he would defy a federal directive requiring the Alabama National Guard to provide benefits to same-sex spouses of its members.   (Compl. at ¶ 16.)

---

[2] Since the filing of this suit, a sister federal court has declared Alabama's Marriage Sanctity Laws unconstitutional under the Fourteenth Amendment's Due Process and Equal Protection Clauses. *Searcy v. Strange*, ___ F. Supp. 3d ____, No. CIV.A. 14-0208-CG-N, 2015 WL 328728, at *5 (S.D. Ala. Jan. 23, 2015). This court is not bound by *Searcy*. As that court acknowledged, *see id*. at *3 n.1., the constitutionality of marriage laws like Alabama's will be "definitively decided by the end of the current Supreme Court term" in an appeal from the Sixth Circuit's opinion in *DeBoer v. Snyder,* 772 F.3d 388 (6th Cir. 2014).

Governor Bentley admitted these allegations in his Answer. (Ans. at ¶ 16.) However, in his motion to dismiss, Governor Bentley references media reports that the Alabama National Guard has complied with the Pentagon's directives. (Doc. # 48, at 4.)[3]

The Complaint also joins as defendants the Alabama State Registrar of Vital Statistics, the Probate Judge of Montgomery County, and Richard I. Lohr, the Administrator of the Estate of David Fancher. Those three defendants were voluntarily dismissed by Plaintiff early in this litigation, but Mr. Lohr recently has appeared and intervened as a defendant for the limited purpose of depositing wrongful death settlement proceeds into the court's registry pending the court's resolution of pending cross-motions for summary judgment. A competing claimant for the settlement funds, David Fancher's mother, Pat Fancher, has also been allowed to join this case as an intervenor-defendant.

Governor Bentley's motion to dismiss (Doc. # 48) was filed on July 24, 2014, over four months after he filed his answer, and within weeks of the end of the period allowed to conduct discovery.

---

[3] Although Governor Bentley has referenced news stories not identified on the face of Plaintiff's Complaint to rebut one of the Complaint's allegations about the National Guard, (*see* Doc. # 48, at 4 n. 1), that news report contradicts Governor Bentley's Answer which admits Paragraph 16 of the Complaint. For that reason, the court gives no weight to the Governor's reference to the news report, and the motion is treated as a facial attack on subject-matter jurisdiction rather than a factual attack.

## IV.  DISCUSSION

**A.**   **Legal Basis and Standard for Granting Sovereign Immunity**

Governor Bentley, who is sued in his official capacity only, argues that he should be dismissed as a defendant on the basis of Alabama's sovereign immunity. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "While the Amendment by its terms does not bar suits against a State by its own citizens, th[e Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  "[T]he Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest."  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).

However, state officials may be sued for prospective injunctive relief to stop continuing violations of federal law, per the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).  *Id.*  The doctrine is a "legal fiction" insofar as "it creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority, and, hence, without immunity protection, when they enforce

state laws in derogation of the Constitution." *Id.* at 1336–37.  But *Ex parte Young*

requires that the joined state official "have *some connection with* the enforcement

of the [allegedly unconstitutional] act." *Ex parte Young*, 209 U.S. 123, 157 (1908)

(emphasis added).  Therefore,

> unless the state officer has some responsibility to enforce the statute
> or provision at issue, the 'fiction' of *Ex parte Young* cannot operate.
> Only if a state officer has the authority to enforce an unconstitutional
> act in the name of the state can the Supremacy Clause be invoked to
> strip the officer of his official or representative character and subject
> him to the individual consequences of his conduct.

*Summit Med. Assocs.*, 180 F.3d at 1341 (citing *Ex parte Young*, 209 U.S. at 159–

60).

An examination of cases applying these principles is helpful.  In an action

involving several alleged violations of constitutional rights arising from systemic

deficiencies in Georgia's criminal justice system, the Eleventh Circuit held that

Georgia's governor was a proper defendant because he was, under Georgia law,

"responsible for law enforcement," was "charged with executing the laws

faithfully," and because he possessed authority "to commence criminal

prosecutions" and to direct Georgia's attorney general "to 'institute and

prosecute'" actions on the state's behalf.  *Luckey v. Harris*, 860 F.2d 1012, 1016

(11th Cir. 1988) (citing various provisions of Georgia's Constitution and Code).

But in contrast, in *Women's Emergency Network v. Bush*, 323 F.3d 937, 949–50

(11th Cir. 2003), the Eleventh Circuit held that Florida's governor was not a proper

defendant to a suit challenging the constitutionality of a state law authorizing "Choose Life" specialty license plates and providing for the distribution of fees collected from the license plate sales. The governor's purported connection to the license plate program was through his responsibility over the Department of Highway Safety and Motor Vehicles, but the court found this connection "too attenuated to establish" his responsibility for the distribution of revenue generated by the specialty license plates. *Id.* at 949. The court explained further that "[a] governor's 'general executive power'" does not provide a sufficient connection to a state law to permit a federal court to exercise jurisdiction over him or her, particularly "[w]here the enforcement of a statute is the responsibility of parties other than the governor." *Id.* at 949–50 (citing *Harris v. Bush*, 106 F. Supp. 2d 1272, 1276–77 (N.D. Fla. 2000)).

In *C.M. ex rel. Marshall v. Bentley*, 13 F. Supp. 3d 1188, 1205–06 (M.D. Ala. 2014), this court granted Governor Bentley's motion to dismiss on sovereign immunity grounds after finding that his asserted connection to the enforcement of the Alabama Accountability Act of 2013, through the oversight of state education funds and budgets, was too attenuated to support his joinder as a defendant. And in *Searcy*, a similar same-sex marriage case in the Southern District of Alabama, the court found that the plaintiffs "failed to allege, specifically, that Governor Bentley is responsible for the challenged action of enforcing or implementing the

Marriage Sanctity Laws." *Searcy v. Strange*, No. CIV.A. 14-0208-CG-N, 2014 WL 4322396, at *4 (S.D. Ala. Aug. 28, 2014) (internal quotation marks and alterations omitted).[4]

## B. Arguments

Governor Bentley's motion to dismiss is based on most of the precedents discussed *supra*. Additionally, he argues that Plaintiff lacks standing to sue him

---

[4] The plaintiffs in *Searcy* were represented by different counsel than Plaintiff, and their arguments and pleading were likely different than Plaintiff's. However, *Searcy* aligns with the opinions of several other federal courts faced with sovereign immunity defenses raised by state governors and attorneys general joined as defendants in constitutional actions for state recognition of same-sex marriages. *See Searcy*, 2014 WL 4322396, at *4 n.7.

For example, in *Bishop v. Oklahoma*, 333 F. App'x 361, 365 (10th Cir. 2009), the court held that a same-sex couple could not sue Oklahoma's governor and attorney general because the "generalized duty to enforce state law, alone, is insufficient to subject them to a suit challenging a constitutional amendment they have no specific duty to enforce." *See also Kitchen v. Herbert*, 755 F.3d 1193, 1202 (10th Cir. 2014) (distinguishing *Bishop* on the basis of Bishop's facts that Oklahoma marriage recognitions were "within the administration of the judiciary" as opposed to the executive branch of Oklahoma government). The *Bishop* panel also reasoned that standing was lacking because the plaintiffs' alleged injury was not caused by either the governor or the attorney general and could not be redressed by an injunction against either of them. 333 F. App'x at 365.

In *Harris v. McDonnell*, 988 F. Supp. 2d 603, 609 (W.D. Va. 2013), the Western District of Virginia concluded that Virginia's governor was not a proper defendant to a same-sex marriage constitutional challenge because "Virginia's marriage laws do not expressly refer to the Governor, there is no allegation that the Governor has taken steps to enforce the same-sex marriage ban, and there is no dispute that the suit may continue against" another state official defendant. In *Robicheaux v. Caldwell*, 986 F. Supp. 2d 749, 752 (E.D. La. 2013), *reconsideration denied* (Jan. 13, 2014), the Eastern District of Louisiana dismissed the state attorney general from the plaintiff's same-sex marriage action because his "sweeping responsibility to enforce" state law did not furnish the "*Ex parte Young* specificity nexus between [him] and the alleged unconstitutional provisions."

These authorities are persuasive support for Governor Bentley's motion to dismiss, but the resolution of the motion depends primarily upon Governor Bentley's authority under Alabama law and his conduct with respect to the Marriage Sanctity Laws as they impact Plaintiff.

because Governor Bentley is not the cause of Plaintiff's legal injury and because Governor Bentley could take no action to redress that injury.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (requiring the plaintiff to show that he suffers an injury in fact, causal connection between the plaintiff's injury and the defendant's complained-of conduct, and the likelihood that the injury is redressable by the court's decision in the plaintiff's favor).

Plaintiff opposes Governor Bentley's request for immunity, arguing that "[f]or the last four years, Governor Bentley has publicly and emphatically stated . . . that he *does* have the authority and *will exercise* that authority to enforce Alabama's marriage restrictions."  (Doc. # 53, at 2.)  Plaintiff maintains that he named Governor Bentley as a defendant not merely because of his supreme executive power, but because of Governor Bentley's expressed intention to follow the Marriage Sanctity Laws.  Plaintiff cites five instances of public declarations by Governor Bentley that he "will fight" this suit and other similar suits challenging the Marriage Sanctity Laws and that he "ha[s] to defend," "execute," "protect," and "uphold" the Constitution" and "the laws of the state."  (Doc. # 53, at 4–5 (citing Exhibits A–E to Decl. of David Dinielli).)

In response to Governor Bentley's suggestion that Plaintiff's allegations regarding the Alabama National Guard are unsubstantiated, Plaintiff stresses that Governor Bentley did not deny the allegations in his Answer.  Plaintiff asserts that

Governor Bentley's admission of his allegation concerning the denial of benefits to same-sex spouses in the Alabama National Guard "at the very least, make[s] 'plausible' the proposition that Plaintiff will be able to prove his claims against Governor Bentley." (Doc. # 53, at 2 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 682 2009)).)   Further, Plaintiff says that Governor Bentley's change of mind only confirms his exercise of authority and discretion to defend the Marriage Sanctity Laws.

Plaintiff also argues that former Governor Fob James entered an executive order in 1996 prohibiting probate judges in Alabama from issuing marriage licenses to same-sex couples, declaring that same-sex marriages entered under the laws of other states must be disregarded, and directing the divisions of the Alabama executive branch to enforce his order.   According to Plaintiff, that executive order arguably is still in effect and sets a precedent for Governor Bentley to take similar actions either in favor of or against the recognition of same-sex marriages in Alabama.

Plaintiff relies on the Tenth Circuit's decision in *Kitchen v. Herbert*, 755 F.3d 1193, 1202 (10th Cir.) *cert. denied*, 135 S. Ct. 265 (2014), where the court looked to the state official's "*actual exercise* of supervisory power."   (Emphasis added).   In *Kitchen*, the Governor and the Attorney General of Utah, but not the Salt Lake County Clerk responsible for issuing marriage licenses, appealed the

10

district court's order declaring unconstitutional Utah's amendment defining marriage as between couples of the opposite sex.  The Tenth Circuit sought to ensure that the Governor and Attorney General were proper appellants in the absence of the County Clerk.  *Id.*

The Tenth Circuit distinguished the facts in *Kitchen* from the facts in *Bishop*, noting that marriage licenses are issued in Utah not by court clerks – who are part of the judicial branch of state government – but by executive branch "county clerks."  The Governor and Attorney General of Utah "ha[d] explicitly taken the position in th[e] litigation that they 'have ample authority to ensure that' the Salt Lake County Clerk" complied with the traditional practice of limiting the issuance of marriage licenses to opposite-sex couples.  *Id.*  The Tenth Circuit found that the defendants' position was supported by Utah's statutes, which charged the Governor with "supervising the official conduct of all executive and ministerial officers" and "seeing that all offices are filled and the duties thereof performed." *Id.* (citations and alterations omitted).  The court further found that the Attorney General could direct a deputy state attorney to prosecute a county clerk for a misdemeanor offense of knowingly issuing a prohibited marriage license, and the Governor could direct the Attorney General to participate in such a prosecution. *Id.* at 1202–03.  Finally, the court observed that Utah cabinet officials overseeing state agencies had been directed by the Governor to consult with the Attorney

General's deputies and about any conflicting laws not clearly answered by the ruling of the federal district court. *Id.* at 1203.

For all these reasons, the court held "that the Governor's and the Attorney General's *actual exercise of supervisory power* and their authority to compel compliance from county clerks and other officials provide[d] the requisite nexus between them and [the challenged constitutional amendment]. *Id.* at 1204 (emphasis added). The Tenth Circuit clarified that the Governor and the Attorney General would be proper parties even if they were not "specifically empowered" by statute to act, so long as they had assisted or were assisting in giving effect to a challenged law. *Id.* On this authority, Plaintiff asks this court to exercise jurisdiction over Governor Bentley because he, and a predecessor, Governor James, have actually exerted their authority to enforce Alabama's marriage laws.

Plaintiff acknowledges that his standing is implicated if the Governor's arguments in favor of immunity are accepted. Plaintiff contends that "if Governor Bentley can be named as a Defendant under *Ex parte Young*, Plaintiff has standing to name him as a Defendant." (Doc. # 53, at 10 n.4.) And so Plaintiff admits the converse is likewise true. If Governor Bentley is entitled to immunity, the reasons supporting his sovereign immunity undercut Plaintiff's standing to sue Governor Bentley.

Governor Bentley replies that "it is true that [he] personally supports [the Marriage Sanctity L]aws, and that as Chief Executive[,] he will enforce them to the same extent that all valid laws are enforced." (Doc. # 56, at 2.)[5]  However, the Governor contends that he has not taken any action to prevent the recognition of same-sex marriages in Alabama, to alter the existing laws, or to otherwise directly connect him to the State's "on-the-ground enforcement" of the law.  (Doc. # 56, at 1–2.)

## C.   Conclusions

Upon consideration of the parties' arguments and relevant case authorities, the court concludes that Governor Bentley is due to be dismissed from this suit on grounds of sovereign immunity and because Plaintiff lacks standing to sue him.

First, there is no dispute from Plaintiff that the Governor's general authority as Alabama's chief executive official does not warrant his joinder as a defendant, and Eleventh Circuit case law precludes any contrary conclusion.  *See Women's Emergency Network*, 323 F.3d at 94. ("A governor's 'general executive power' is not a basis for jurisdiction in most circumstances.").

Second, with respect to Plaintiff's allegation, admitted by Governor Bentley, that Governor Bentley intended to contradict federal directives to extend benefits to same-sex spouses of members of the Alabama National Guard, Governor

---

[5] Document 56 specifically involves Governor Bentley's motion for protective order, but the argument cited goes to the merits of his motion to dismiss.

Bentley's oversight of the Alabama National Guard has no direct relation to Plaintiff's desire for state recognition as the surviving spouse of David Fancher. Even if Governor Bentley had followed through with his public statement and defied the Pentagon's directives with respect to the members of the Alabama National Guard, Plaintiff would be unaffected. Plaintiff is not affiliated with the Alabama National Guard, nor is this an action to receive spousal employment benefits from any other state entity. By Plaintiff's own allegations in the Complaint, the state officials possessing authority to redress Plaintiff's situation are the State Registrar for Vital Statistics and the Montgomery County Probate Judge. (*See* Compl. at ¶¶ 18–19.) Plaintiff's injury is not directly caused by Governor Bentley or redressable by Governor Bentley.

Third, with respect to Governor Bentley's public comments cited in opposition to Governor Bentley's motion that he supports the defense and enforcement of Alabama's Marriage Sanctity Laws and that he opposes Plaintiff's suit, these comments reflect Governor Bentley's personal convictions and constitute commentary on litigation impacting the State he governs, but his words have not been accompanied by official actions. Plaintiff has not alleged or shown that Governor Bentley has taken any actual actions in his capacity as Governor to prohibit the recognition of same-sex marriages in Alabama. Plaintiff has not alleged or demonstrated that Governor Bentley has intervened in, directed, or

superintended the work of the Alabama officials who would be capable of providing Plaintiff (or persons similarly situated) with the legal recognition of same-sex marriage that is requested in the Complaint.

Further, Plaintiff has not shown that Governor Bentley has specific statutory or constitutional responsibility to provide relief to Plaintiff.  Plaintiff offers no statute authorizing Governor Bentley's involvement in matters of marriage or responsibility to superintend or command probate judges or the state registrar of vital statistics.[6]  Governor James's nineteen-year-old executive order concerning same-sex marriages is not a sufficient justification for joining Governor Bentley as a party in the absence of Governor Bentley's reliance upon that order, enforcement of that order, or promulgation of his own similar directive to state officials and agencies.

For all these reasons, this court finds that Governor Bentley lacks the connection required by *Ex parte Young* to support joinder as a defendant to this suit.  Governor Bentley's motion to dismiss is due to be granted on the basis of his entitlement to sovereign immunity and because Plaintiff lacks Article III standing to sue the Governor.

---

[6] And events that have transpired in January and February of 2015, and the Governor's response thereto, after the parties briefed the motion to dismiss, confirm that the Governor has taken no such action other than to state publicly his disagreement with the recognition of same-sex marriage.

## V.  CONCLUSION

Consistent with the foregoing analysis, it is ORDERED that Governor Bentley's motion to dismiss (Doc. # 48) is GRANTED and that all claims against Governor Bentley are DISMISSED with prejudice.

DONE this 10th day of March, 2015.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE